All right. We will hear from Mr. Hope, representing S.G.E. Management. May it please the Court. Plaintiffs now present only one possible theory for certifying this class action. They say that they must show that no rational person would have participated in stream energy if they were told, rightly or wrongly, that it was a pyramid scheme. But that's a tough standard to meet. That's a pyramid scheme. That's a tough standard to meet, that no rational person would have done this, and plaintiffs don't meet it. As plaintiffs' own cases make clear, this is a, quote, high bar. Look, for example, at the C.G.C. case. That's the case that they talk about in their 28-J letter. You can certify this class only if plaintiff's behavior, and I quote, cannot be explained in any way other than reliance upon the defendant's conduct. It must be, quote, inconceivable that any rational class member would knowingly participate, such that fraud must be, quote, the only logical explanation for the conduct. Now, this case badly fails that tough standard. Of course a rational person could have participated in stream energy, for any number of reasons. Now, what interests me is the date. The class action begins at a particular date. Now, is that date, you got expert testimony that will say at that date the market was saturated, and that no rational person, if they had been aware that it was saturated, would have invested in this opportunity because they would have known that it could have no profit to those late investors. Is that an argument that's being made here? Two answers, Your Honor. No, that's not their argument. Their argument is they can certify this class not because no rational person would join a saturated business. That's not their argument. Their argument is no rational person would join a pyramid scheme, period. Very different. Very different. Why couldn't they get in in the beginning? Why couldn't you certify a class of the people who got in right at the top of the pyramid? Are they rational or irrational if they made a profit? No. I'm sorry. I'm not sure I understand that. You're saying no one would join if they knew it was a pyramid. No, I'm saying that's their argument. No, Your Honor. Right, right. But what, I guess the argument is, what about the people who actually made a profit, who were at the top of the pyramid, who, some people made profit out of this. Yeah, absolutely. Could a class be certified of those? Yeah. And in fact, let me take a shot. Please tell me if I didn't answer your question. But my second answer was going to be, when you actually look at the people in this class period, people who joined exactly at the same time, tens of thousands of people made money. There were people who joined in 2009, 2010, late in the class period, who made over half a million dollars. But you're saying they offered no, I mean, as Judge Clement has pointed out, I mean clearly people that join a pyramid scheme, if it is a pyramid scheme, early on are going to make money. I mean, they stand a high chance of making money. People that join it late have a negligible chance of making money. Now, is there a cutoff period here where you can say, I don't want, you know, the people that invested here in the first part of the period, I'm representing in this class, the people that joined the pyramid here, and I have an expert that testifies the market was saturated then. Have they offered any kind of evidence like that? They have not. This class period, let me talk about the class period. This class period is from the very beginning of this process. I believe it was January 1, 2005, right at the outset of this process, all the way up through, I believe it's 2012. So this is a very broad class period. And our supposition is people who joined at the very end of that class period can still make money. Let's be clear. Stream Energy has been in business now for a decade. People to this day are still making money. People are joining the class, people who joined during the class period have not just made money. Tens of thousands of people have made money. How many? I mean, that's a very small percentage, as I understand it. The people that have joined late are making money. People who joined late, people who joined in 2009 made over half a million dollars. 2010, making, there are plenty of people who made six-digit figures. But... What are we talking about? What are the early dates and what are the late dates? I mean, do we have any kind of cutoff period of when anybody's contending that the market was saturated and there was no reasonable prospect for anybody to make money thereafter? I don't think so. You can make, you can join right now and make money. People are doing this today and they're making money. Are we talking about three percent or are we talking about 50 percent of the people that join now are making money? I would submit that it doesn't matter what the percentage is, Your Honor. What matters... How many losers were there? Isn't that what you're really asking? How many, percentage-wise, how many losers were there as opposed to these... I don't know the specific statistics for any class period. My point, though, is it really does not matter. The question before the Court is would a rational person, knowing what they're supposed to know, would they decide to join? And our point is, yes, they would join for a simple proposition. They thought, they could have rationally thought that they would make money. And that's just the economic reason. There are non-economic reasons as well. Let's rephrase that. Would a rational person join it informed of what a pyramid scheme is and that this is a pyramid scheme? Right. And our point is, yes, absolutely a rational person could join for any number of reasons. Just to take one example, but there are many others, rational economic actors can and do participate in business ventures if they think they can make money. And anyone could have rationally thought that they would make money through stream energy. After all, let's just understand what this business is. All you have to do is sign up a certain number of people who are willing to buy energy or sell energy, and you can do this either by yourself or through a sales force that you leverage. You do those things, you will make money. You will make a certain amount of money. And it's undisputed. If you said you will make money, that may be a misrepresentation. Some people ain't going to make it. If you do those things, you will make money. And by the way, to the extent that there are individual misreps, that's already dropped out of the case. There's only one issue at this point in this appeal. It's this notion that all they have to do is allege a pyramid scheme, and on that basis alone, you can certify. But for purposes of appeal, people were told you can make money doing these things, and that is true. The only fact they put forth is, look, we will prove at trial that this is a pyramid scheme. So the question before this Court is, if people could have made money, is it still true that nobody would have done it? Even though they could have made money, nobody would have done it but for this allegedly fraud statement about pyramid scheme. And that's just not true. I thought the issue here was commonality of evidence. And I thought the commonality of evidence was a common misrepresentation that the class relied on. And then it seems to me that a misrepresentation, that a representation that is not a misrepresentation at an early point in this scheme, would later become a misrepresentation because here they could make money, there they couldn't make money. And they were still saying you can make money. I don't know. I mean, that's just a little complicated. But I mean, I thought that, you know, that's why there was no commonality among the class from the beginning to the end. But the commonality of the evidence that they would prove their claim on would begin to become more common toward the end of it when there was less opportunity or no opportunity to make money. I mean, 3% of the people made money, 97% of them didn't. Our proposition is simple. Certainly at the beginning of this class period, certainly the middle of this class period, and frankly at the end of this class period, throughout this class period, rational people could have thought that they could make money doing this. And so many of them would have joined regardless of what you told them about it. And that remains true to this day. To this day, people can . . . I'm not embracing it that way. Instead of saying misrep . . . using reliance and misrepresentation, they could have made money. I mean, are you assuming that the representation is that you can make money and they're claiming that it's a misrepresentation just to say that you . . . Well, what we're trying to do is to show that different people would react differently to the alleged fraud that they're putting forth. Some people might decide, you know what, I'm not going to do it. I'm not interested. Some people would say, you know what, I will do it. I'll do it because regardless of these accusations, true or otherwise, I see that if I sell a certain number of customers, I can make money. So I just don't care about this representation. I'm not buying into that too much because, I mean, you're talking about on that basis that hardly ever be any commonality of evidence because everybody's an individual. I mean, even in fraud, I mean, some people would say, well, I know there's fraud in there, but I'm not going to make money in it. I mean, or . . . I mean, what I understand this to be is misrepresentation, reliance and misrepresentation. Maybe I'm not getting it. I don't know. And that's different from what you're saying. Well, this Court . . . let me see if this helps. This Court has certainly repeatedly said that when you have individualized issues of reliance, that is fatal class reference. That individual . . . we have to have common . . . we have to have reliance on . . . there has to be some commonality of what . . . of the misrepresentation upon which they're relying. That's the way I understand the case. And that individualized . . . we'll never get it. I mean, I understand that. And I understand also the evidence in this case is that if you go back from the beginning to the end, there is no commonality, because some people . . . because at the beginning, what later is said to be a misrepresentation is a fair representation. You can make money. Later that becomes a misrepresentation. You can't make money. So there's no commonality unless you . . . unless you segregate the class into different time periods. And that's the way I was looking at it, and I may be wrong. So if I understand, Your Honor, you're saying this class cannot be certified. So we get reversal . . . That's my impression. I mean, frankly, I mean, because there are too many . . . there's no commonality of the evidence upon which they would rely for misrepresentation. We completely agree with you . . . I know you would on that. We completely agree with you that there is no commonality in this class. What does that do, though, with proximate cause? You talk about the individual issues, and you said some people would and some people wouldn't. But it seems to me that the commonality . . . the common issue is the fact that it is a pyramid scheme. That's their common theory of misrepresentation. The question now is, what about reliance? And our point is, different people would answer the question differently. If I can . . . let me just talk about the different kinds of people who would nevertheless join. There's the entrepreneurial person who has a sales network already, or they want to build a sales network. There's an at-home parent who just, you know, doesn't want to make the big money. They just want to make a little side income, and they've got friends who want to join up. You've got high-risk investors who don't care about the . . . who are comfortable with high-risk situations. You've got people who aren't doing it for economic reasons at all. The district courts . . . Does that analysis destroy most any class action based on economic motivations? I don't think it would at all, Your Honor. It depends on the situation. It depends on the . . . Maybe I'm missing something. No, there's . . . if I may, a situation where literally everybody would act the same way. Well, it's a common divide and conquer defense to a charge like this. No, for example, there are cases . . . I think it's the Peterson case. You're offered an opportunity. You pay a fee for a tax benefit. As it turns out, every single member of the proposed class, they're all statutorily ineligible for that tax benefit. That would be a situation where you don't expect any person to do that. So I don't think we're being categorical in any way, shape, or form, Your Honor. It's just that in this case, different people would in fact react differently. Do you have real people, real evidence, or just these propositions? If you look at plaintiffs . . . first of all, it's their burden, obviously, but on top of that, if you look for just one example, Schedule 1 attached to their plaintiff's expert report, it lists people who joined in 2009, people who joined in 2010. They're making half a million dollars, more than half a million dollars. Other people who made six-figure income, they're people who joined in the last month of this process who've already made back their money. My question to that would be, compared to what? How many are making money compared to people that are not making money? And if you've . . . you know, you've got a substantial number, I think your argument holds up. But if you've got 3 percent people making money, 97 percent are not making money, then I don't think 3 percent can destroy the class action of 97 percent. That's the way I would look at it. Well, respectfully, Your Honor, I don't think the numbers should matter for this reason. Look, the question is, what would a rational person do at the top? All right? And it's just a simple fact of America, of free markets, that many small businesses don't work out, that they fail. Now, that doesn't mean that they were all crazy, all irrational. It just means that things did not work out. And so the only question before the Court . . . it really does not matter what the subsequent percentages are. Could a rational person, knowing everything, have decided, you know what, I'm going to go ahead and do this? And as I said, there are plenty of different economic situations where they would do it, but there are also non-economic situations that are relevant in this case. Yeah, but I mean, the mistake . . . I mean, the mistake that it seems to me you're making is the mistake of economics, that people are finally beginning to realize. And that is that there is a rational person who always acts consistently rationally, as everyone else does. And there are many factors other than rationality that motivate conduct. And something that's rational to me is not rational to somebody else. I mean, it's . . . you know, it's not taking into account human beings as . . . the way human beings conduct themselves and conduct their business. And some people in economic circles began to recognize that. I actually agree with what you said. Different people would react to business opportunities differently, including this business opportunity. And that's all we're saying. Different people react differently, therefore there's no commonality. I see that my time has expired. Well, that's why I'm saying there's no reason to . . . I mean, why I have difficulty premising the denial of the class action, or the grant of the class action, on the rationality that you were talking about, other than commonality of evidence, and just the usual language of 23B. I know my time has expired. May I just answer that point? We are emphatically not arguing for a categorical rule. All we're saying is you look at the specific facts of that case. There are situations, many situations. The case law includes both situations, where some people . . . some situations nobody would do it. In other situations, some people would do it, some people wouldn't. I mentioned just one case. If you're simply ineligible for something, and they don't tell you that, then yeah, you're not going to buy that product if you're literally guaranteed to not get anything out of it. In that case, you should certify, and the case did certify. Okay. Thank you, Mr. Hogue. Thank you. Saves some time for rebuttal, I believe. Thank you. Mr. Systrom? May it please the Court, my name is Eric Systrom. I represent the plaintiffs. I want to start with Judge Weiner's question, because I think that it is actually at the essence of this case, and that they will not speak forthrightly about what the real question is, which is whether people would knowingly join a pyramid scheme, understanding what a pyramid scheme is. That's not about whether you'll make money, right? Because that's not just the question. The question isn't, am I maybe going to lose? It's, I know that it's mathematically inevitable that either I'm going to lose money, or I'm going to victimize somebody else. That's the only way you come out with your shirt in a pyramid scheme. You have to knowingly become a victim, or knowingly become a fraudster. And we're saying that it's perfectly rational for a jury to infer that of the hundreds of thousands of people who lost money in this scheme, they all had as a bedrock assumption that this was really a legitimate business and not an unlawful venture. And there's just no analogy to an asset bubble or another risky business that an entrepreneur might get involved in, because investing in asset bubbles is legal. Joining a pyramid scheme knowingly is a fraud. It's a fraud on everyone below you. And I just want to point out, you are correct. The people who got in at the beginning and made money would be differently situated from other class members who came in later. But they're excluded from the class. Everybody who made a dollar is out. It's only the people who lost. And the people who lost, if they had somehow worked harder and made money, they just would have victimized other people who would have lost. Some of those same people who made money are relying, and didn't make money, in what you're saying, segregate them where they did and did not make money. The same representations are made to each of them. And the same representations are true, would be true to the people that were in the early part of the class that didn't make money, as well as those who did make money. That's right. They just don't have damages. The people who made money don't have any damages. So we wouldn't have a cause of action with respect to them. That's why they're excluded. They're members of the class, though. What did you say? No, they're not members of the class. They're definitionally excluded if they made money. This class is limited to those who lost. Exactly. The class definition is limited to the losers. And those losers are inevitable. How can you say that a misrepresentation, that this is a good business deal, made half the people money and half the people not money, and consequently is somehow a RICO fraud? I don't see that. It's not half the people. That's a big deal. If it were half the people... But 25% made a lot of money and 75% didn't. It's not 25%. And this is critical. If it had been 25%, 50%, they would have a defense that they could bring before the class certification. What do you say on that? How many people made money? How many people lost money? 86% of people lost money. We know that as a matter of fact. 86% of all the people who got into the... Every single person who joined, 86% of them lost money and less than 1% made money selling energy. And they say there are people who joined late who made millions of dollars. It's not in their brief. I don't know what they're talking about. There's maybe one or two human beings who joined late. The losers only put in that initial fee, that $329? The losers, no. The losers often paid the initial fee, sometimes the website fees. I mean, and we're also excluding a lot of other losses like time and money they've invested in trying to, you know, either unknowingly defraud their friends and family. What's an average loss starting at the $325? Do you know the average loss? I mean, not potentially what they could have made, but really what they lost. I think the average loss is on the order of $200 to $300. I mean, people do not make back a very large amount of their initial investment. They often find one person who will invest, you know, who will buy it, their friend. You know, they're asking us to believe that they knowingly defraud their mothers or their friends or their family members. Those are the people they encourage you to go sign up. And when they say that people knowingly join a pyramid scheme, that's the question. Knowingly join a pyramid scheme. What they're saying is they know that they're taking money from their mom, who's inevitably going to lose, or their best friend, who's inevitably going to lose. That's just not a logical proposition. But look, we aren't asking the court to say we're right and instruct the jury that we win if it's a pyramid scheme. We're just asking to be able to prove to the jury that it's a rational inference that they can draw, that people who are drawn into a pyramid scheme... And look, he's still telling... Yeah, okay. Well, I'm trying... Tell me why I'm wrong to keep hanging up on misrepresentation as a basis of this... Reliance on misrepresentation as a basis of this case. I don't think you're wrong at all. I just think you may have your finger on a slightly wrong misrepresentation. Because we don't think the representation is you can make money. The representation is... What is the misrepresentation? The misrepresentation is that this is a lawful enterprise. And that's exactly what the district court said. The district court said that everybody would have been impliedly represented, that this is a lawful, legitimate enterprise, and not a pyramid scheme. And people do not rationally join pyramid schemes. At some point in the briefs, I thought I was certainly under the impression that the legality of a pyramid scheme is not an issue in this case. Oh, no. The legality of a pyramid scheme is not an issue because every court agrees that if it is a pyramid scheme, it's per se unlawful. But we do have to... Yeah, but we define a pyramid scheme. Some things like Amway is a pyramid scheme, but it's yet legal because they dot right up and color it up with a lot of other things. There are lots of things that are shaped like pyramids, including ordinary organizational structures. We're not arguing that those are per se unlawful. The dividing line is whether recruitment, it's predominantly a recruitment scheme or predominantly a sales scheme. And there are lots of frontline defensives that are available to say, this is not a recruitment scheme. You could, for example, this is what Avon does, who is no longer in the DSA and is not a peer of theirs. Avon says, you can get a full refund if you can't sell the product, and you can only get returns for a few levels of people below you. So the incentive remains to actually sell the product and not just find new dupes to pass the rolling the ball up the hill. Even though it is a pyramid scheme, it is a legal pyramid scheme. It's not a pyramid. We wouldn't call it a pyramid scheme. It's multi-level marketing. And we are not trying to launch, that's their argument, that there are legitimate multi-level marketing schemes. And we don't want a rule that we can come into court and just allege that everything's a pyramid scheme and get a class action. There are real barriers to that that don't require violence to class action law. One of them is Twombly. You have to make a plausible allegation that it's a pyramid scheme and not just multi-level marketing. And the other is Walmart. You have to do a rigorous analysis of the evidence to show that we can really give a common answer to what we say is the common question. The reason they didn't ask the district court to do that, and in fact told the district court not to do that, is because they know we have the goods in this case. Their CEO wrote a letter saying, our business model is robbing Peter to pay Paul. And they wrote another email saying, we have to stop giving out our numbers because the number of people who sell the product relative to the number of customers is terrible. They know it's a unlawful pyramid scheme, and that's why they don't want the ordinary doctrines. They just want to kill a class action so that they'll never have to respond or make whole the people that they hurt. But, I mean, again, you're not basing your case on the fact that it's an unlawful pyramid scheme. I mean, at this point, certifying the class, you're trying to get a class certified because they meet the requirements of Rule 23. And that means commonality of the evidence that they're going to depend on to prove their RICO claim. Absolutely. The core question in the case is, is it a pyramid scheme or not? All the evidence on that is common. We put all that evidence in our brief. They don't respond to it, but all their evidence will be common, too. It's all just about the scheme. Then there is a separate question of reliance. And the district court said, you could answer that with common evidence, too, because you'll show that it's a pyramid scheme. Everybody was implicitly represented that it was lawful and not unlawful. They don't contest that implicit representation was given to everybody. In fact, he made it to you today that this is a lawful scheme that you could join without defrauding anyone. We submit that's false. If you join the scheme today, you would either lose money or victimize somebody else, right? And so they don't contest that representation. And the district court said the jury would be entitled reasonably to infer, if we carry our burden and show that inference is reasonable, that rational people would not knowingly join that kind of scheme. Now, they say the standard is we have to prove that there isn't even one theoretical human being who would have acted in another way. That's not the standard. They're drawing that out of dicta from some cases. We think there's a very fair statement of the standard in Clay v. Humana, which is a leading case from the 11th Circuit. It says, it doesn't strain credulity to conclude that each plaintiff relied upon the defendant's representations and assumed they paid the amounts that were due. A jury could quite reasonably infer that guarantees concerning physician pay, that's the issue in that case, the very consideration upon which their agreements based go to the heart of the agreements. And that's a far cry from presumed reliance. So, you could take other statements of the standard that aren't, you know, there's no possible theoretical person. Also, the Chief Justice's recent opinion in Halliburton says your ability to pick off individual plaintiffs with defenses does not suggest that common questions don't predominate. We're talking about a class of hundreds of thousands of people who all lost money in the exact same way. And they say there might be one or two of them who knew it was a pyramid scheme and signed up anyway. We suggest that those people don't actually even exist. There's no reason to believe anyone would take the stand and say, yeah, you know what, I knew that either I was going to lose money or I was going to victimize someone else, I did it anyway. We don't even think the defendants are going to take the stand and admit to that. Well, I don't know about that. I mean, it seems to me that the nature of human beings is that if you tell somebody, look, you can get in this scheme, and if you get in it right now, you're going to make about $250,000. But that does mean that you're going to get the $250,000 and people are going to get less and less if they join it later and maybe lose money. And that guy that you've offered $250,000 is going to say, oh, no, I'm not going to do that because I'm worried about the victims down the road? I don't think so. If they know that there are people who joined up early who they told that to, we would like to know that because we think that those people should be defendants, right? And if those people are plausible, we would track them down. But it's just not plausible to believe. What was left out of that hypothetical was, and by the way, this is an illegal scheme. Yeah, that's absolutely right. You would have to tell people, this is unlawful. What you're doing is you're going to prison, right? And what you're doing is either victimizing yourself or finding somebody else to victimize. The reason that the law says, and this is critical to our case. That brings a kind of interesting question about how many of the class members should be defendants in this case as opposed to plaintiffs? It's a vanishingly tiny amount of people. And the reason is because they know that rational people don't join pyramid schemes, they have a script on their website for convincing people that it's not a pyramid scheme. And they still represent to you today that it's not a pyramid scheme. The answer is zero, because the class is defined as those who lost money. Right, of course. And it's limited to only people who lost money. I don't know that it's zero, but the existence of one isn't sufficient. The Chief Justice, as I said, just wrote that the fact that you could pick off some hypothetical plaintiff doesn't mean that... You hadn't limited this class. Is the class limited in specific words to people who lost money? Absolutely. That is in the class definition in so many words. If you made money... But in so many words. I mean, but is that in those words? Yes, in those words. That's what I mean, in those words. If you made money, you aren't in the class. Why would they be a member of the class if they had made money? Right, exactly. We wouldn't want them to be members of the class, because they have no You know, so I want to make one other critical point about which party is asking for a categorical rule, because I think it's quite clear that it's not us. All right, we say that you can certify a case like this when there's a legitimate inference that people would not have joined this kind of fraudulent scheme, really understanding what they were getting into. But we don't say that we get that that's true in every case. We don't say it's true even in every pyramid scheme case. And they get to try to rebut that inference, both at the class certification stage and at trial, with evidence that there really are people who would have joined, or with, you know, anything else that they can muster. Their rule is that there is not a single pyramid scheme case that you could certify as a class action, because they haven't identified any fact about this pyramid scheme case that's different from any other. And that would be a genuinely startling result, because every private pyramid scheme case that we could find is a class action, right? Now, we're not saying that any of those cases control on all fours, but we literally haven't found one case in which a pyramid scheme class action was defeated at the Court of Appeals level. And that's important, because what they're asking you to do now is adopt a rule that says all those cases were wrong. You know, maybe they didn't consider this precise issue, but someone should have figured it out. When no one has come up with it before, it's probably not the right rule. So they're the ones asking for a categorical rule. You can tell it from the briefing. We want you to consider the facts of the case. You define an illegal pyramid scheme as one in which the money is made from recruiting members and not from selling the product. That's the FTC's definition. It's adopted by the Ninth Circuit in Omnitrition, which is the leading pyramid scheme case. Every other Court of Appeals has followed. And you're saying that from the get-go, this particular scheme was designed to achieve that very result? I would like to read you their own statement of how the scheme works, all right? In order to be a legitimate sales scheme and not a pyramid scheme, this has to be about selling energy, not recruiting other people, okay? This is how they describe their own scheme. This is on page 2 of our supplemental record excerpts. They say, and I quote, fortunately, this is not about becoming an energy expert or salesperson, okay? And then this is on page 10 of our supplemental record excerpts. You don't have to become an energy salesperson, okay? That is the test. Is this a scheme where people become energy salespeople, or is it a scheme where they go and recruit their friends and neighbors ad infinitum until somebody gets victimized at the bottom? And they've just said it's the latter kind of scheme. And he's up here telling you that you could join today and make money. Maybe you can. But if you do it, you're going to have to find somebody else to steal the money from. And if he really explained to you that that was the mathematical reality, I'm quite sure you wouldn't sign up. It's against the law. But aren't you recruiting your friends and neighbors and your mother or whatever to sell the energy? Well, you're recruiting them to sell the energy. You're a salesperson. You're recruiting them to sell. Yeah. But you're also recruiting, but the pitch is that they can recruit the next person and sell on and on down the line. And it's only 50 cents a person that they can get from selling energy to try to earn back their $329 up front and $25 a month for a website. And I'd like to talk about the numbers, because they're also incredibly instructive. On page 14, I think it is, of our supplemental record excerpts, there's this entry, average MEI, that's the amount of money they pay out to their IAs, per customer. It's $54 in 2012. They had 500,000 customers, and it's 50 cents a month for a direct customer. So if you do the math, the direct sales commission for signing people up that year was $3 million. And they paid out $54 million per customer in other bonuses. Paid out what? $54 million in bonuses. So 50 of the 54 million is for getting lower down recruits, is a recruiting incentive. The incentive for direct sales, actually selling the product, is literally less than a tenth. And where does the defrauder make his money in that scheme? How does that? He's paying out $50 million to people that are going to sell the gas? No, it goes, it's a recruitment bonus. So a ton of that money is going to the few individuals at the top who set the scheme in motion. Who are recruiting? They're not recruiting anymore. They just set up the scheme and set it in motion. They've made tens of millions of dollars for doing nothing. They make the money off those people selling gas. Yes, they make $7.50 on each sale, while the direct sales person, the person who actually does the selling, is getting 50 cents. That's why it's not set up to incentivize actual sales. It's set up to incentivize recruitment. That's the essence of a pyramid scheme. And I just, I want you, I'm sorry, I just want to be really clear about this. What we do, the essence of that is, as Judge Wiener said, is you have to understand what that means. And what it means is that it's mathematically inevitable that you will lose money or you're going to have to victimize somebody else. And that's what we submit, the jury would infer, that rational people would not join, knowing that that's what they were doing. Other than a few, you know, counter examples, a few hypothetical people, that's not sufficient to defeat predominance, as the Supreme Court has recently said in Howard. So the misrepresentation here is that Stream said that, represented that this is a legal business, knowing full well from the get-go that it was an illegal pyramid scheme. That is exactly right, and I couldn't say it better, and that's, I think, exactly what the District Court says. He explains that there's a distinction between two theories in this case, one based on a huge set of misrepresentations. You can make money, it's easy to make money, it doesn't matter when you join up, not all the money goes to the early people. He says that's not the basis for class certification. Instead, class certification is limited to one representation, that this is a lawful venture and not a pyramid scheme, because people naturally would rely on that when they sign up. People don't rationally get involved in pyramid schemes, because they're not just risky. The scheme would have to be set up in such a way, would it not, that it is a fraud from the beginning? Absolutely. That's the common question. That's what we will prove at trial, and we want badly to prove it, because we have the evidence. In terms of proving that, have you shown colorable facts, alleged allegations that will show that? Absolutely. We have all the facts in our brief. I mean, we're the only party that wants to talk about them, and I think I've given you the best ones today. I just want to make clear, the district court very well could have said, you have the facts. They told the district court not to. The district court asked him in so many words, do I have to decide the merits of whether this is a pyramid scheme for class certification right now? They said, no, that's a merits question, that's irrelevant, don't decide it now. They can't fault the district court for not having decided it. If there's any concern, we're quite certain we're going to have colorable claims. In fact, there's a motion for summary judgment pending right now. As soon as the stay is lifted, the district court will rule, and we're quite confident, say that we have enough evidence to make out that this is an unlawful pyramid scheme, exactly. Per se unlawful. One last thing. Okay, I'll give each side another minute. I do think that what they said in their stay motion is important. They told this court when they saw the stay, that it was going to be impossible to sign up any more people if the court even notified people that this was a supposed pyramid scheme. That allegation had been made in a federal court case. They just said it would be harder. That's not true. They put in a sworn affidavit that would be like a district court injunction if the class served not merits. I am happy to talk about all the different indicia why we are not a pyramid scheme if that is of interest to this court, but they've said that's irrelevant. What is relevant. It's not irrelevant to me. Okay, then let's talk about it, Your Honor, because there are. In other words, that's the essence of the cases they presented is that this was an illegal pyramid scheme from the very beginning, and that is the misrepresentation and the rely. The allegation that we're a pyramid scheme is irrelevant, and it's false. It's false on several levels. Most notably, it's false because we sell a real product, energy. We've got billions. What do you say about $50 million for recruitment and $4 million for sales that were paid to the associates or whomever they are called? I'm not sure I've heard this. Well, you've heard it just now, or maybe I'm misstating it. Here's what the data show. The revenue that this. Did I misstate that? I don't know what they said. I'm not sure I understood it, but let me just give you came from energy sales. The overwhelming majority of sales revenue we earned came from sales of energy, not recruiting fees. Over 97% of our revenue comes from the sale of energy. We're one of the largest energy retailers in the state of Texas. We've been in business for 10 years. Pyramid schemes collapse. We've been in business for 10 years, and throughout the entire period. You're saying that 97% of the income of your company is from sales and only 3% is from recruitment. Correct. That's undisputed. How does that job, where are they getting this $50 million versus $4 million? They said $4 million was the profit that we received from energy in one particular year, 2012. Let me just attack that. In 2012, the difference between the price we bought energy for and sold it is actually $135 million. I have to reiterate, to this day, people can join and make money. That is not the indicia of a pyramid scheme 10 years in. What do you say with respect to the fact that 86% of the associates in whom you've signed up lost money? I think the question is, well, there are two issues. Is that true? On the merits, we do dispute that number. But again, we're not supposed to be talking about the merits at this stage, but I'll just say this. It is a simple fact of American business, small businesses fail. That happens. The question is, if you do your business, are you provided an honest opportunity? Can you actually make money through this business? And you absolutely can. Where is the small business if you are the largest in a 10-year business of selling and the largest in the state of Texas? Are you talking about the individual investors? I am. So they're the small business. Right. They're the small business. Well, they're the small business, and as I said, there are people who are joining in 2009, 2010, who are making money. That shows that there's certainly a great indicia that rational people can look at this program and decide that this is, in fact, something they are interested in doing regardless of what they want to say about it. Why is the Chamber of Commerce in this case? I think that's a very important point because they are concerned about the proposed rule that this case would set up. What they are saying is, if you allege a pyramid scheme, they're not saying if you allege a system that is destined for every single person to fail. They're not saying that. They're not alleging a class certification theory based on saturation. Their class certification theory is, as I heard it, nobody would join a pyramid scheme. Now they're saying, in particular, this illegal aspect. Let me just give you a hypothetical on the illegal because we need to remember, why is the no rational person test here? If the question is, should people commit crime? Of course not. But that's not the question we're asking here. The question we're asking here is, do people commit crime? The whole purpose of this is to figure out whether we should certify classes or not, whether there are people who belong as plaintiffs in a suit as opposed to, perhaps, defendants. Let me just give you a hypothetical. If I were to provide you a business opportunity, you can sell designer handbags. But I also tell you, by the way, these are knockoffs. These are illegal to sell. Are they seriously saying that nobody would take that opportunity? The streets of New York City are lined with people who are willing to take this opportunity. And they would submit that they get to be plaintiffs. That's just wrong, Your Honor. But what they're saying is that if that individual that you were going to offer the opportunity to sell on New York streets knew that they were going broke, broke, if they looked into the matter, then they would not take the opportunity. I mean, the mere fact that it's illegal, I agree. But it's illegal, but why? Because it puts the screws to somebody down the line. Why couldn't there be a class action by those who purchase from these down the lines on the streets of New York and getting boned? You're talking about the consumer or the people who actually do the business? The people who buy from them. That's obviously a different case. That means that what they've done is a pyramid scheme. But they know it's fake. Right, no, exactly. People who willingly enter the business, they decide, you know what, I'm comfortable doing this, I'm interested in doing this. We get to ask people those questions because different people would, in fact, react differently. I think it's important to remember the district court itself acknowledged that there are non-economic reasons why people would have joined. The district court said there are some people who didn't care about making money. They joined at the prodding, quote, at the prodding of a neighbor or a friend who was an IA. Those people shouldn't get to sue. There are people who join for purely social experience reasons. You know, we've all heard of Tupperware parties. There are people who join because they want to be part of a social community. There are events that you can go to. Those people should not get to sue. We're not saying that nobody gets to sue. We're saying that different people will have different reactions and we get to ask those questions of each individual plaintiff. And that's the prototypical situation where reliance is individualized and not common. The plaintiffs are saying that the commonality is the misrepresentation that was well known to stream that this was a pyramid scheme in which most of the people are going to lose money. That's what they said. It's a fraud to begin with. That's what they say. And that your client knew it. And for that reason, it was a misrepresentation to say that it was a legitimate business opportunity. I mean, that's what they're saying. And they said they proved it. They said they've got evidence to show that. Well, they say that they have evidence. We emphatically protest any notion that we're a pyramid scheme and we look forward if they want to proceed in an individual trial, we're happy to produce that. The FTC has certainly never found that. They have cited that some evidence that would support that. But the question is, are we going to a class trial with all the interim pressures of settling improper, meritless cases? Or should they be allowed to proceed only on an individual basis? That's the only question. Well, I mean, do you concede that if this were an illegal pyramid scheme, that is that the scheme was set up so that most of the income to the corporation, most of the profits to the corporation, would come from recruitment and not from sales, if a stream knew that, it would be an illegal pyramid scheme? You're asking if they could prove it, should this be certified? Well, yeah. No. Again, it's not a categorical answer. It depends on what fact patterns you can produce. But if that's all you're saying, then I would not concede certification on that basis any more than you would certify my designer handbag hypothetical. Just because there are people out there who are willing to sell fake handbags and trick consumers, those people should not be allowed to sue the person who gave them that business opportunity. If it's decertified and sent back to Judge Hoyt, are you saying that he should determine whether, in fact, this is a pyramid, that that was never determined? We're not saying — I think we agree that the pyramid scheme question is literally not an issue right now. Right. The only question right now is, do you get to certify a class? At a minimum, let's remember what their theory was below. Their theory below was, they don't need any evidence. They don't need — and I quote from the brief, we do not need proof of reliance. They said that in the district court because — I mean, it just — I can't get over the seeming contradictions of saying that the argument here. I think one of their footnotes — one of their footnotes literally says, we recognize that none of these facts are relevant. It's a merits issue, not a class certification issue. It is profoundly important for this Court to set the rule for when district courts should and should not certify. And that's why the Chamber of Commerce is so upset about this ruling. If you — what they're proposing is, all we have to do is allege a pyramid scheme, and we get to go straight into class actions, regardless of the fact that different people would react differently to any number of business opportunities. They'd react differently because they have different economic interests. Some people could do this. Some people won't do it. They have different views because of non-economic reasons. If you can certify this — Okay, that's the end of it right now. But what I'm going to do is, there are probably some unanswered questions here, and when you get back to your respective offices, you want to look over the argument and see points that you might have made that you didn't make that would enlighten us. We invite you to do that. But it will be simultaneous letters filed by Monday of next week. You can look it over. I mean, the arguments are available to you here, so you look it over and make that decision instead of going any further with it  Thank you very much. Including what happens if it's decertified? Including what? What I had asked Mr. Ho, what happens if it's decertified? Does it go back to Judge Boyd to resolve the pyramid issue? May I actually answer that? I'm not sure I had answered that question. No, no, no, no, no. That's the end of it. That's the end of it. And then he'll have to send a letter. Well, he'll send a letter. We'll get it, and then, you know, there are allegations that are made that you don't agree with. I'm not sure if you can ask permission for responding to the opposite response to the questions that I've asked today. But otherwise, next Monday, by the close of business, you can file a letter not to exceed four pages that address issues that you think were not resolved in this argument. Okay? Thank you, Your Honor. That concludes the arguments we have on appeals today. We are staying in obsession until 9 o'clock tomorrow morning.